In re PINTLAR CORPORATION, Debtor.

In re GULF USA CORPORATION, Debtor.

Bankruptcy Nos. 93–02986, 93–02987.

United States Bankruptcy Court, D. Idaho.

Aug. 1, 1995.

Joshua J. Angel, Laurence May and Kevin R. Toole, Angel & Frankel, New York City, and Randall A. Peterman, Elam & Burke, Boise, Idaho, for debtor.

Joel Gross, Washington, DC, and Peter R. Mounsey, Denver, Colorado, for the Department of Justice.

Ted Yackulic, Seattle, Washington, for the Environmental Protection Agency.

Lucille E. Phillips, Tacoma, Washington, for ASARCO.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

Debtors Gulf USA Corporation and Pintlar Corporation (collectively "DIP") move for an order of the Court allowing and approving the transfer of certain real property to the

Environmental Creditors [1] as part of the settlement arrangement between the DIP and the Environmental Creditors. The transfers are also part of the plan of reorganization. The property is referred to as the "remediation realty" and cannot be accepted by the Environmental Protection Agency under Section 104(j) of CERCLA, 42 U.S.C. § 9604(j) if the property is subject to certain interests. The claimed interest of American Smelter and Refining Company ("ASARCO"), is such an interest. The property is thus proposed to be transferred "free and clear of all claims, liens and encumbrances to the extent permitted by law".

ASARCO objects to the transfer. ASARCO argues section 363(f)(1) [2] does not allow the DIP's the right to convey the property otherwise than subject to ASARCO's interests in the property.

ASARCO further questions the DIP right to convey the property since this provision of the plan was not contained in the disclosure statements.

## DISCUSSION

 ASARCO categorizes its interest in the property as easements, "... provided to the mining companies to allow the transfer and deposit of mining tailings via waterways in the Couer d'Alene River Valley."

ASARCO's claimed easements are based on a quitclaim deed dated November 11, 1959, by which Seattle First National Bank quitclaimed its interest in the property to Bunker Hill Company, the latter being the successor in interest to the DIPs. The Bank was acting as a trustee for several mining companies, including ASARCO, for what interest it held in the property as successor in interest to the Spokane and Eastern Trust Company. Consequently, the pleadings refer to the interest as the "SET reservation".

The SET reservations on behalf of the mining companies as contained in the quitclaim deed include the right of "dumping any tailings, waste materials or debris" resulting from their mining activities "into the Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries", and a 10% royalty on the net proceeds of ore produced by Bunker Hill from the property quitclaimed. Bunker Hill further agreed to release the other mining companies from future claims for damages for the dumping of the tailings and the other materials into the river. No party to this issue seems concerned with the royalty provision. The royalties appear to be a right of ASARCO and the other companies, binding on Bunker Hill Company successors in interest and thus will be deemed an interest exempt from the free and clear language of the conveyance.

The pertinent part of the quitclaim deed relative to the reservations of the right to dump in the future and the release is as follows:

PROVIDED, however, that the said party of the first part does here unto reserve unto itself "... the right and privilege to carry on and continue in the County of Shoshone any and all mining, milling and smelting operations in which they or any of them may engage in said county, and the right and privilege of dumping any tailings, waste materials or debris that may result from such mining, milling and smelting operations into the Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries or along the banks thereof, and of having such tailings, waste materials and debris transported and carried away by the said waters of the Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries; and the said property of the said party of the first part and each and every part thereof is hereby made subject to and charged with the said mining, milling and

---

1. The Environmental Creditors are defined in Section 1.41 of the DIP proposed plan as "Environmental Creditors" means all creditors who hold Environmental Claims. The Environmental Protection Agency of the United States has filed an environmental claim.

2. 11 U.S.C. § 363(f)(1) provides:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
 (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

11 U.S.C. § 363(f)(1).

smelting operations of the aforesaid corporations, in the past ... and also with all the mining, milling and smelting operations in the future of the said party of the first part ... and in further consideration of the above the said party of the second part does hereby release the aforesaid corporations and their successors and assigns from all damages and claims of damages in the future ..."

The purpose of the arrangement was apparently to allow Bunker Hill to maintain ownership of the property with the right of the other mining companies to dump their tailings on the property. The property includes some 2780 acres, and constitutes a portion of the mining settling ponds on the Coeur d'Alene River.

The Environmental Protection Agency will obtain title to the property through the confirmed plan and then intends to convey it to the State of Idaho. The Environmental Protection Agency cannot accept the property subject to the release in favor of ASARCO for future damages caused by dumping mineral waste. Such could conceivably be considered a future liability of Government, both Federal and State, occasioned by the very type of activity CERCLA was enacted to prevent regardless of the slim prospects of the legitimate exercise of ASARCO's right to dump in the future.

The United States, on behalf of the Environmental Protection Agency, one of the environmental creditors, argues the reservations are personal, and do not run with the land, and thus do not bind Bunker Hill's successors in interest. The release provision would not run with the land since it was a personal obligation of Bunker Hill Company and holds no specific relationship or ties to the real property. Nor was the obligation made binding on the successors and assigns of Bunker Hill Company by the conveyance of the deed.

■ The dumping easements are more difficult, however. As argued by the Environmental Protection Agency, the covenant to allow for future dumping was a generalized right to dump tailings into the Coeur d'Alene River. One wonders how a reservation could be made by an adjoining property owners in a deed to allow dumping in the Coeur d'Al-ene River. Yet the deed must be interpreted to grant or reserve the right to dump within the perimeters of the metes and bounds description of the 2780 acres involved. It is further more difficult to say that applicable nonbankruptcy law permits sale of the property free and clear of this interest.

I find it more practicable to consider the impossibility of ASARCO's ability to dump mining tailings and other waste in the Coeur d'Alene River in the future. With the present status of the environmental laws, the exercise of such a right within the context of legality would seem impossible. Unlike ASARCO, I would conclude it is a worthless property right, and would feel the Environmental Creditors would look at the issue in the same way.

But I cannot conclude that nonbankruptcy law permits the transfer of the property free and clear of such interest. If there is environmental law that would allow such, it has not been presented to me.

I accept the contention of the United States and conclude the release was personal to the Bunker Hill Company and did not run with the land. The objection of ASARCO to the conveyance of the property free and clear of its right to dump tailings and other waste will be granted.

■ While the details of the transfer may not have been contained in the disclosure statements, such would not, and did not, prejudice ASARCO's right to object to the transfer.

The motion of the Environmental Protection Agency and the Environmental Creditors to convey the property free and clear of the release reservation will be granted and the DIP's motion to transfer will be approved by separate order.